**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES F. SMYTHE, I,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 25-2780 (JEB)** |
| **DEPARTMENT OF HOMELAND SECURITY**, *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

James F. Smythe, I, a New Jersey resident proceeding *pro se*, believes that he is under investigation by the Department of Homeland Security and its subsidiary Federal Protective Service. He brings a host of claims against the Department and FPS Agent Jason S. Bookstaber, as well as two unnamed Defendants, related to this suspected investigation and to document requests he has made of DHS in his effort to get to the bottom of it. Defendants, for their part, move to dismiss six of the nine counts Plaintiff asserts — some for lack of subject-matter or personal jurisdiction, others for failure to state a claim, and most for more than one of these reasons. Agreeing that each of the six counts at issue exhibits one or more of these defects, the Court will grant Defendants' partial Motion to Dismiss.

## I.    Background

Although the details are scant and the timing of relevant events is not entirely clear, Smythe alleges that DHS agents interviewed him and certain family members, living in separate households, in order to retaliate against him for criticizing the government. <u>See</u> ECF No. 1 (Compl.), ¶¶ 9–10. The recorded timeline begins on April 28, 2025, when he submitted a

Freedom of Information Act request to FPS seeking "(1) DHS's communications with Plaintiff's father; (2) DHS's communications with [an entity described as] UCSF; [and] (3) all documented communications where Bookstaber or colleagues referenced Plaintiff by name." Id., ¶ 12. Two days later, FPS deemed the request "too broad" and sought more details, and in July the Cybersecurity and Infrastructure Security Agency followed suit with respect to FOIA requests that Smythe had apparently submitted there, too. Id., ¶¶ 13, 15. The rest of the summer saw substantial back and forth between Plaintiff and DHS regarding these requests, but with no materials being released. Id., ¶¶ 16–21; see also ECF Nos. 1-1 (Email Exh. 1); 1-2 (Email Exh. 2).

Smythe filed his Complaint in this Court on August 15, 2025, asserting nine separate counts. Counts I and II allege that DHS ran afoul of FOIA and the Privacy Act, respectively, in its management of his request for information. Id., ¶¶ 22–25. Counts III and IV charge that the Department also violated the Rehabilitation Act and Americans with Disabilities Act, respectively, because this alleged mismanagement discriminated against him on the basis of a disability. Id., ¶¶ 26–29. According to Count V, the agency also violated various provisions of the Administrative Procedure Act. Id., ¶¶ 30–31. Count VI alleges that DHS's investigation amounted to retaliation in violation of the First Amendment, and Count VII alleges that those conducting it — Bookstaber and two unnamed agents or supervisors — violated his Fourth and Fifth Amendment rights under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See Compl., ¶¶ 32–34. Finally, Smythe submits that DHS unlawfully procured or disclosed his electronic communications (Count VIII) and surveilled him in violation of the Foreign Intelligence Surveillance Act (Count IX). Id., ¶¶ 35–36. He generally

2

seeks monetary, declarative, and injunctive relief for these alleged violations.  Id. at ECF pp. 12–13.

In moving to dismiss Counts III–V and VII–XI, Defendants invoke Federal Rules of Civil Procedure 12(b)(1), (2), and (6).  See ECF Nos. 16 (Mot.); 16-1 (Memo.).  They claim to seek dismissal of Counts III–XI but make no mention of Count VI — Plaintiff's First Amendment retaliation claim — in their Motion.  See Mot. at ECF p. 1; Memo. at ECF pp. 8, 29.  The Court therefore sets Count VI aside and considers Defendants' arguments for dismissing Counts III–V and VII–IX.  Plaintiff was invited to respond to the Motion to Dismiss, but his pleading largely ignored the issues raised in Defendants' Motion.  See Order of June 1, 2026; ECF No. 18 (Response).

## II.     Legal Standard

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13–14 (quotation marks and citation omitted) (alterations in original).  In policing its jurisdictional borders, the court treats the complaint's factual allegations as true and grants the

3

plaintiff the benefit of all reasonable inferences.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Under Rule 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over him.  The plaintiff bears the burden of establishing personal jurisdiction for each defendant, FC Inv. Grp. LC v. IFX Mkts, Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008); Rush v. Savchuk, 444 U.S. 320, 332 (1980), including by demonstrating proper service of process. Mann v. Castiel, 681 F.3d 368, 372 (D.C. Cir. 2012).  In deciding whether the plaintiff has shown a factual basis for personal jurisdiction over a defendant, the court resolves factual discrepancies in favor of the plaintiff.  Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990).

Rule 12(b)(6), finally, provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  In evaluating a motion to dismiss under that Rule, the court must "treat the complaint's factual allegations as true and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation."  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation omitted).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the allegations "must be enough to raise a right to relief above the speculative level."  Twombly,

4

550 U.S. at 555–56.  Where the action is brought by a *pro se* plaintiff, the court must construe his filings liberally and hold the complaint to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Schnitzler v. United States, 761 F.3d 33, 38 (D.C. Cir. 2014).

**III.    Analysis**

The Court addresses in turn the six counts on which Defendants have moved to dismiss, handling the first two together.

A.      Counts III and IV: Rehabilitation Act and ADA

Plaintiff alleges that DHS violated the Rehabilitation Act and the ADA — related disability-discrimination statutes — by refusing him access to the materials he sought via FOIA in light of an asserted disability and requested accommodations.  See Compl., ¶¶ 26–29.

Defendants first move to dismiss the Rehabilitation Act count for failure to state a claim. See Memo. at 4–6.  "To prove a violation of section 504 [of the Rehabilitation Act], the plaintiff[] must show that (1) [he is] disabled within the meaning of the Rehabilitation Act, (2) [he is] otherwise qualified, (3) [he was] excluded from, denied the benefit of, or subject to discrimination under a program or activity, and (4) the program or activity is carried out by a federal executive agency or with federal funds."  Am. Council of the Blind v. Paulson, 525 F.3d 1256, 1266 (D.C. Cir. 2008).

Smythe never adequately checks the all-important disability box.  The Act defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102; see Nurriddin v. Bolden, 818 F.3d 751, 756 n.3 (D.C. Cir. 2016) ("The Rehabilitation Act incorporates the definition of 'disability' from the

Americans with Disabilities Act."). "It is," of course, "the plaintiff's burden to prove that he is disabled." Haynes v. Williams, 392 F.3d 478, 482 (D.C. Cir. 2004). Smythe, however, has identified neither his alleged disability nor its limitation on any major life activities. See Compl., ¶¶ 5, 26; see also Carter v. Carson, 241 F. Supp. 3d 191, 196–97 (D.D.C. 2017) (failure to state Rehabilitation Act claim where plaintiff did not specify any major life activity affected by asthma, high blood pressure, and other ailments). Because the pleading standard demands more than "labels and conclusions," Twombly, 550 U.S. at 555, Plaintiff has not stated a claim under the Rehabilitation Act.

Next, given that the ADA relies on the same definition of "disability" as the Rehabilitation Act, Defendants argue that Plaintiff's ADA count is doomed for the same reason. See Memo. at 8; see also Wall v. District of Columbia, 2025 WL 958233, at *4 (D.D.C. Mar. 31, 2025) (dismissing ADA retaliation and interference claims where no disability shown within § 12102 definition). But before the Court can reach even that ADA prerequisite, as Defendants correctly surface, the ADA does not apply to federal agencies. See Memo. at 7; Sattler v. U.S. Dep't of Just., 2020 WL 3064422, at *1 (D.D.C. June 8, 2020); see also Smith v. Pallman, 420 F.App'x. 208, 214 (3rd Cir. 2011); Dyrek v. Garvey, 334 F.3d 590, 597 n.3 (7th Cir. 2003).

Although courts, including in this district, do not agree as to whether the inapplicability of the ADA to federal defendants is properly considered under Rule 12(b)(1) or 12(b)(6), Smythe's ADA claim falls either way. Compare, e.g., Sattler, 2020 WL 3064422, at *1 (considered under 12(b)(1)), Emrit v. Nat'l Insts. of Health, 157 F. Supp. 3d 52, 56 n.3 (D.D.C. 2016) (same); Brode v. FAA, 2020 WL 4004823, at *4 (C.D. Cal. 2020) (same), with, e.g., Klute v. Shinseki, 797 F. Supp. 2d 12, 17 (D.D.C. 2011) (considered under 12(b)(6)), Kramer v. Bessent, 2025 WL 2576482, at *9 (E.D.N.Y. Sept. 4, 2025) (same).

Both of Plaintiff's disability-related counts, therefore, will be dismissed.

B.　　Count V: APA

Smythe's APA claim alleges violations of that Act in the handling of his information requests. See Compl., ¶¶ 30–31. DHS argues that the Court lacks jurisdiction over his APA claim because alternative causes of action are available. See Memo. at 8–10. Although the D.C. Circuit holds that this argument raises a 12(b)(6) deficiency and not a jurisdictional one, the result is the same: Count V cannot proceed. See Oryzsak v. Sullivan, 576 F.3d 522, 525–26, 525 n.2 (D.C. Cir. 2009) (APA's §§ 701–706 reviewability provisions go to APA cause of action and not court's jurisdiction).

The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Here, however, other adequate remedies exist: "[T]he Privacy Act and FOIA provide for review of an agency's allegedly unlawful conduct that is no different from district-court review in an APA case." Haleem v. U.S. Dep't of Def., 2024 WL 230289, at *14 (D.D.C. Jan. 22, 2024); see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just., 846 F.3d 1235, 1246 (D.C. Cir. 2017) ("[W]e have little doubt that FOIA offers an 'adequate remedy' within the meaning of [APA] section 704 . . . ."). Plaintiff indeed brings claims under those Acts in this very lawsuit, and the Court discerns no material difference between the relief sought under this count and what Plaintiff seeks under the FOIA and Privacy Act counts. See Compl., ¶¶ 22–25, 30–31; cf. Citizens for Resp. & Ethics in Washington, 846 F.3d at 1246 (no "yawning gap" between public-release remedy sought under APA and individual-access remedy available under FOIA); Haleem, 2024 WL 230289, at *14 (same in FOIA and Privacy Act context despite additional declaratory relief sought). Count V will therefore be dismissed for failure to state a claim under the APA.

C.      Count VII: Bivens Claims

In events that apparently galvanized his FOIA request, Smythe claims that DHS agents violated his constitutional rights when they allegedly interviewed him and his family members. See Compl., ¶¶ 9–10, 33–34.  Defendants offer several reasons to dismiss these Bivens claims against Agent Bookstaber and the unknown Doe Defendants, arguing that the Court lacks personal jurisdiction over Bookstaber, see Mot. at 11–12, and, alternatively, that Plaintiff has not pled a valid Bivens claim and that qualified immunity would shield Bookstaber even if he had. Id. at 12–17, 20–22.

"Ordinarily, determining jurisdiction is a federal court's first order of business."  Forras v. Rauf, 812 F.3d 1102, 1105 (D.C. Cir. 2016); see also, e.g., Kaplan v. Cent. Bank of the Islamic Republic of Iran, 896 F.3d 501, 510 (D.C. Cir. 2018) (Court "must . . . assure itself that it has personal jurisdiction before moving on to address the merits of a claim.").  The Court thus begins there before considering the 12(b)(6) basis for dismissal.

1.      *Personal Jurisdiction*

Personal jurisdiction comes in a general and a specific form.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  Where a plaintiff can show one of "a limited set of affiliations with a forum," all of which are tantamount to a defendant's domicile, general jurisdiction is appropriate.  Daimler AG v. Bauman, 571 U.S. 117, 137 (2014).  D.C. law mirrors this due-process requirement: courts "may exercise personal jurisdiction over a person domiciled in" the District.  See D.C. Code § 13-422.  The two "essential elements of domicile" are "[r]esidence in fact" and a defendant's "purpose to make the place of residence one's home." Texas v. Florida, 306 U.S. 398, 424 (1939).  With no suggestions that Bookstaber "has ever

stepped foot in the District of Columbia," Memo. at 11 — let alone that he lives or intends to live in the District — the Court finds general personal jurisdiction unavailable here against him.

Specific jurisdiction, conversely, permits a court to adjudicate "issues deriving from, or connected with, the very controversy that establishes [the] jurisdiction." Goodyear, 564 U.S. at 919 (quotation marks omitted). To show specific jurisdiction, a plaintiff must meet the requirements of that jurisdiction's long-arm statute and the Due Process Clause. D.C.'s long-arm statute enumerates the kinds of contacts with the District that are sufficient to bring a non-resident defendant into a D.C. court. The two relevant here are:

> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendant] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

D.C. Code § 13-423(a). And to comport with due process, a nonresident defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation marks omitted). Those guarantees are satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984)), and if "the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. (quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984)).

9

There is no contention here that any tortious injury — such as the home interviews — occurred in D.C.  The Court, therefore, will dismiss the Bivens claim against Bookstaber for want of personal jurisdiction.

What about the unnamed Defendants?  Smythe brings the same Bivens claims against John Doe, Bookstaber's superior at DHS, see Compl., ¶¶ 8, 10, and Jane Doe, presumably another DHS employee.  Id. at ECF p. 6 (referring to Jane Doe as DHS employee); id., ¶ 8 (same); but see id., ¶ 10 (calling Jane Doe "a Department of Education official").  Although Plaintiff does not list the Doe Defendants on the Complaint's cover page and they do not appear on the docket, he does include them in his typed version of the case caption, he lists them among the parties, and he lodges the substance of Count VII against them in particular.  Compare id. at ECF p. 1 (Doe Defendants not listed), with id. at ECF p. 6 (listed), and id., ¶¶ 8, 33 (listed and discussed).  Construing this *pro se* Complaint liberally, then, the Court will treat the Does as Defendants in this case.  See, e.g., Blount v. County of Onondaga, 2020 WL 9264843, at *3 & n.4 (N.D.N.Y. Oct. 19, 2020) (treating uncaptioned parties against whom relief is sought in *pro se* complaint as defendants), report and recommendation adopted, 2021 WL 958456; Herrington v. Elliot-Blakesly, 2014 WL 1896683, at *1 n.1 (D. Or. May 9, 2014) (same).

Even though there is little to indicate personal jurisdiction over the Doe Defendants, it is their duty, and not the Court's, to raise this waivable ground for dismissal.  See Fed. R. Civ. P. 12(b), (h)(1); Anger v. Revco Drug Co., 791 F.2d 956, 958 (D.C. Cir. 1986); cf. LKQ Corp. v. United States, 2019 WL 3304708, at *8 (D.D.C. July 23, 2019) (claims against unnamed defendants dismissed for lack of personal jurisdiction where defendant's motion raised defense as to unnamed defendants).  Because they have not done so here with respect to the Doe Defendants, the Court turns to the merits of the claims against those two.

10

2.      *Bivens*

Courts assess the validity of <u>Bivens</u> claims using a two-part test.  <u>Egbert v. Boule</u>, 596

U.S. 482, 492 (2022).  First, does "the case present a new Bivens context — *i.e.*, is it

meaningfully different from the three cases in which the Court has implied a damages action"?

<u>Id.</u> at 492 (cleaned up).  If so, are there any "special factors counseling hesitation" about

judicially creating a remedy that Congress has chosen not to?  <u>Bivens</u>, 403 U.S. at 396.  The

Court asks each question of Plaintiff's claim here — that is, "[b]y sending agents to interrogate

Plaintiff and his family members at independent and separate household[s], and doing so without

legitimate predicate and for the purpose of chilling Plaintiff's speech," the "Doe Agents violated

Plaintiff's Fourth Amendment rights (unreasonable searches/seizures through coercive, targeted

home interrogations) and Fifth Amendment rights (substantive due process, familial privacy, and

equal protection component)."  Compl., ¶ 33.

As to the first question, Plaintiff seeks to extend <u>Bivens</u> to a very new context indeed —

an alleged law-enforcement interview that, at least as described by Smythe, shows no signs of a

constitutional defect.  True, <u>Bivens</u> claims have been recognized under the Fourth and Fifth

Amendments, yet a "claim may arise in a new context even if it is based on the same

constitutional provision as a claim in a case in which a damages remedy was previously

recognized."  <u>Hernandez v. Mesa</u>, 589 U.S. 93, 103 (2020); <u>compare</u> <u>Bivens</u>, 403 U.S. at 389

(recognizing cause of action for excessive force in violation of Fourth Amendment), <u>with</u> <u>Boule</u>,

596 U.S. at 490, 494 (purported violation of same right still presented new context).  True, too,

that the home is particularly salient in the Fourth Amendment context, including when evaluating

a <u>Bivens</u> claim.  <u>See</u> <u>Winston v. Monahan</u>, 2026 WL 836315, at *5 (D.D.C. Mar. 26, 2026)

(collecting cases).  But the similarities end there.  Under the Fourth Amendment, the Supreme

11

Court recognized a claim for damages when officers allegedly entered the plaintiff's apartment, searched it extensively, and arrested him — all without a warrant. Bivens, 403 U.S. at 389. The Court also blessed a Fifth Amendment Bivens claim when a congressman blatantly fired an employee because of her gender. Davis v. Passman, 442 U.S. 288, 230 (1979). Here, by contrast, Plaintiff's Fourth Amendment claim is unsupported by any facts suggesting a search or seizure — let alone an unreasonable or warrantless one — and his Fifth Amendment claim does not resemble employment discrimination. See Compl., ¶¶ 9–10, 33–34. The present context is thus undoubtedly a new one.

Turning to question two, reasons "counseling hesitation" to create a new remedy abound in this case. This Court has previously acknowledged that "[o]ne reason to worry is how the constant threat of multi-million-dollar damages suits will affect federal employees trying to do their jobs." Hale v. Collis, 2022 WL 3016747, at *10 (D.D.C. July 29, 2022). Although less is demanded here, permitting these claims to proceed would have the same effect. Once again, it is not clear from the Complaint exactly what issue needs remedying, but to the extent that it involves a practice by DHS officers of interviewing individuals at home, that is a "policy call[]" that does not belong with judges. Id.

The Court, therefore, declines to recognize a Bivens claim here, dismissing the Fourth and Fifth Amendment claims against John and Jane Doe under Rule 12(b)(6), having dismissed the same claim against Bookstaber under 12(b)(2).

D.    Count VIII: Wiretap Act

Smythe also alleges that, somewhere along the line, DHS violated the Electronic Communications Privacy Act's § 2520 (Wiretap Act), a claim he brings only against DHS. See Compl., ¶ 35. The Wiretap Act provides that "any person whose wire, oral, or electronic

12

communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a) (emphasis added). To state a claim, a plaintiff must allege that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." In re Pharmatrak, Inc., 329 F.3d 9, 18 (1st Cir. 2003). Defendant — unimpressed by Plaintiff's cryptic and conclusory charge that "[o]n information and belief, and to be further developed in discovery, DHS unlawfully intercepted . . . Plaintiff's electronic communications and/or used or disclosed their contents," Compl., ¶ 35 — seeks dismissal for failure to state a claim. See Memo. at 17.

Defendant is right, but for an even more rudimentary reason. The emphasis added to the statutory language above should have given away the conclusion that plaintiffs may not sue the United States for actions covered by this provision. Because Smythe lacks a cause of action against a U.S. agency for his Wiretap Act claim, this count must depart. Gilliam v. U.S. Dep't of Just., 128 F. Supp. 3d 134, 144 (D.D.C. 2015); see also Iqbal, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

E.      Count IX: FISA

Finally, Smythe believes that Homeland Security surveilled him in violation of FISA, and the Department asks the Court to dismiss this count for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim. See Memo. at 18–20.

Defendants' 12(b)(1) argument is that the Court lacks subject-matter jurisdiction because Smythe did not exhaust administrative remedies under the statute. Id. at 18–19. FISA states that "[a]ny action against the United States under this section may be commenced only after a claim

13

is presented to the appropriate department or agency under the procedures of the Federal Tort Claims Act."  18 U.S.C. § 2712(b)(1); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").  Administrative exhaustion under the FTCA, in turn, requires that a claimant present to the relevant agency "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim."  GAF Corp. v. United States, 818 F.2d 901, 905 (D.C. Cir. 1987); see 28 U.S.C. § 2675(a).

Smythe took none of those steps; rather, he raises his FISA claim for the first time before this Court.  In Goziker v. U.S. Department of Justice, 2025 WL 2220025 (D.D.C. Aug. 5, 2025), the plaintiff had filed a written complaint with the relevant agency alleging that its subsidiary had surveilled him, but the court nonetheless found that he had not properly activated the administrative process because that administrative submission did not "specify the precise nature of the alleged injury" the plaintiff had suffered.  Id. at *6.  Here, there is no suggestion that Smythe submitted any claim to DHS, let alone an adequate one.  See Compl.; Memo. at 19 (noting that Smythe "ma[de] a passing reference to FISA in his FOIA appeal" but failed to submit separate written complaint).

The Supreme Court recently cast doubt on longstanding precedent in this Circuit that "failure to exhaust administrative remedies [is] jurisdictional" in the FTCA context.  Rasul v. Myers, 512 F.3d 644, 661 (D.C. Cir. 2008), vacated on other grounds, 555 U.S. 1083 (2008); compare Santos-Zacaria v. Garland, 598 U.S. 411, 417 (2023) ("exhaustion is typically nonjurisdictional"), with Ali v. Rumsfeld, 649 F.3d 762, 775 (D.C. Cir. 2011) (affirming dismissal under 12(b)(1) because administrative exhaustion is jurisdictional), and Simpkins v. D.C. Gov't, 108 F.3d 366, 370–72 (D.C. Cir. 1997) (remanding for dismissal under 12(b)(1)

14

rather than 12(b)(6) for same reason).  The Court need not, however, resolve the question of Santos-Zacaria's implications for the jurisdictional status of the FTCA's administrative-exhaustion requirement because the answer is not dispositive in this case.  If Smythe's inattention to that requirement is jurisdictional, the Court must dismiss Count IX under 12(b)(1); if not, it would do the same under 12(b)(6).  Cf. ECC Int'l Constructors, LLC v. Sec'y of the Army, 79 F.4th 1364, 1380 (Fed. Cir. 2023) (failure to comply with statutory sum-certain requirement warrants 12(b)(6) dismissal).

## IV.    Conclusion

The Court, accordingly, will grant Defendants' Motion to Dismiss Counts III–V and VII–IX.  An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 27, 2026

15